UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BHS LAW LLP,

          Plaintiff,

    v.

AT&T CORP., et al.,

          Defendants.

Case No.  25-cv-10712-PCP

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 20

Plaintiff BHS Law LLP brings this class action against defendants AT&T Corp., AT&T Servs., Inc.; and unnamed Does for "billing business customers for telephone services that [AT&T] had suspended, disconnected, or terminated, and … retaining payments for services [AT&T] could not and did not provide." BHS Law says that it had AT&T telephone and internet service lines for its business operations, including for its fire-alarm system. Beginning in 2020, BHS Law complained that its lines were unreliable and failing to transmit a signal. In November 2023, AT&T changed the system, "installed digital gateway equipment" on BHS Law's property, and moved "the fire-alarm lines to a digital platform controlled by" AT&T. BHS Law alleges that AT&T "did not clearly disclose that they had created a new or separate billing account" nor did AT&T "present [BHS Law] with a new written service agreement governing the migrated service."

Around May 2025, AT&T suspended BHS Law's fire-alarm lines for nonpayment. BHS Law alleges that AT&T did not tell it that the fire-alarm lines had been disconnected, which "triggered immediate inspection and intervention by local fire authorities." BHS Law asserts that it then learned that AT&T had installed noncompliant fire-alarm lines and that AT&T was still billing BHS Law for their suspended fire-alarm lines, in an amount totaling $2,340.56 by November 2025. Seeking to avoid violating local regulations, BHS Law paid the balance and

restored service as of December 2025.

BHS Law asserts seven federal and state causes of action and requests declaratory and injunctive relief. AT&T moves to compel arbitration, arguing that BHS agreed to arbitrate its claims when it signed its contract with AT&T. Specifically, AT&T argues that BHS Law accepted AT&T's "Multi-Service Agreement" (MSA), which includes an arbitration provision in which both parties agreed to arbitrate "all claims and disputes arising from this agreement."

The Federal Arbitration Act (FAA) provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract…." 9 U.S.C. § 2. The "foundational ... principle" of this statute is that "arbitration is a matter of consent." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

BHS Law argues that the MSA does not apply here because BHS Law's "claims arise from post-termination conduct, not contract performance." Opposition, Dkt. No. 21, at 6. Because "arbitration is a matter of contract," California contract law governs whether the MSA applies to AT&T's conduct here. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). The California Court of Appeal has held that an arbitration agreement requiring arbitration of "[a]ny dispute or other disagreement arising from or out of this" contract can cover tort claims other than those directly based upon the contract containing the arbitration agreement. *See EFund Cap. Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007). *Pless* concluded that the arbitration agreement at issue in that case applied to plaintiffs' suit because it was a necessary, even central, component of plaintiffs' business tort claims stemming from investments plaintiffs had made in a software company. *See id.* at 1326 (finding claims arose from contract containing arbitration agreement because "if plaintiff and RAP Technologies had never entered into the strategic relationship agreement, the present disputes would never have arisen").

Here, all of BHS Law's claims "arise from" AT&T's purported obligations to BHS Law, which in turn arise from the MSA. Plaintiff's claims arise from the contract for services it entered into with AT&T and plaintiffs' ostensible failure to pay AT&T for service in accordance with that

contract. Thus, the arbitration agreement encompasses BHS Law's complaint.

BHS Law also argues that it did not assent to the MSA because AT&T's eSignature process only linked to the MSA and did not affirmatively disclose that the MSA contained an arbitration provision or require separate affirmation of the agreement to arbitrate disputes.

To form a contract under California law, there must be notice of agreement and both "parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 514 (9th Cir. 2023). California law evaluates assent to online contracts based on the type of contract. The contract here most resembles a "sign-in wrap" agreement wherein a "website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025). A sign-in wrap agreement may be enforceable "if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 1154–55.

Here, each condition is met. First, AT&T provided a link to the MSA in a distinct, blue font below a provision explaining that the "Customer signature serves as a signature of each document listed below," including the MSA. AT&T – BHS Law Agreement, Dkt. No. 15-1. BHS Law received "reasonably conspicuous notice," *Chabolla*, 129 F.4th at 1154, because BHS Law is a business, not a natural person, and "it is reasonable to expect even an unsophisticated businessman to carefully read, understand, and consider all the terms of an agreement affecting such a vital aspect of his business." *See Morris v. Redwood Empire Bancorp.*, 128 Cal. App. 4th 1305, 1322 (2005).

BHS Law also took "some action" to "unambiguously manifest[]" its assent to the contract containing the MSA. *Chabolla*, 129 F.4th at 1155. AT&T has provided evidence that BHS Law administrator Brian Song signed BHS Law's contract with AT&T electronically on November 15, 2024. Dkt. No. 15, 2 ¶ 3; Dkt. No. 15-1. BHS Law does not contest this evidence.

For these reasons, the MSA's arbitration agreement is enforceable and encompasses the disputes presented here. Accordingly, AT&T's motion to compel arbitration is granted. At

United States District Court
Northern District of California

AT&T's request, this case is stayed pending the completion of arbitration. *See* 9 U.S.C. § 3. AT&T must file a report before March 1 and September 1 of each year regarding the status of the arbitration proceedings.[1]

**IT IS SO ORDERED.**

Dated: May 22, 2026

P. Casey Pitts
United States District Judge

---

[1] Plaintiff also argues that its claim under 47 U.S.C. § 201(b) is not arbitrable because it "does not depend on the APB-A agreement." For the reasons noted above, however, that is not the relevant question. Because the statutory claim, like the other claims, arises from the parties' contractual relationship, it is likewise subject to arbitration.